# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

GEORGE O'DELL,

Plaintiff,

vs.                                                    9:13-CV-635
(GLS/ATB)

ERIC T. SCHNEIDERMAN, *et ano.*,

Defendants.

GEORGE O'DELL, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Article 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claims that the defendants violated a federal court preliminary injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money damages. (Compl. at CM/ECF p.4-8).

Presently before the court is the defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1)

and (b)(6). (Dkt. No. 18). Plaintiff has responded in opposition to defendants' motion, and defendants filed a reply. (Dkt. Nos. 22, 23). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I.  <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents

incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II. <u>Background of Relevant Caselaw</u>

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Effective on April 13, 2007, the New York Sex Offender Management and Treatment Act ("SOMTA"), codified in Article 10 of the MHL, authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS-II")*, 785 F.

Supp. 2d 205, 209 (S.D.N.Y. 2011). This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[1] *Id.* "Civil management" can include placement and treatment in a secure facility, akin to incarceration as well as other "strict and intensive supervision." SOMTA provides for procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary.

MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *Id.* MHL Section 10.06(k) mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS-II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05 (d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health

---

[1] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivist sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)). Treatment of these offenders begins during their incarceration on the criminal charges, but the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing MHL § 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General ("AG") is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the AG files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a), (g), and (k)). The hearing must commence within 72 hours of the anticipated release date unless the individual consents or the AG shows good cause for the delay. MHL §§ 10.06(g), (h). Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full commitment trial. MHL § 10.06(k). The statute provides that the trial must begin within 60 days of the probable cause hearing. MHL § 10.07(a).

In *MHLS-1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual

was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15. The court in *MHLS-II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions.[2] The court must note that neither[3] court invalidated the section altogether as plaintiff seems to argue. Rather than prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.***"[4] *Id.*

The court notes that although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients, who were respondents in the MHL

---

[2] Although plaintiff mentions both *MHLS* cases, only the preliminary injunction had been issued at the time of plaintiff's probable cause finding. The permanent injunction was not issued until 2011.

[3] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch. Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

[4] In making this determination, the court likened the analysis under the MHL to the section of the Bail Reform Act which provides for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Probable cause alone will not suffice. *Id.*

proceedings.[5] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the

District Court found that MHLS did not have standing to pursue the respondents'

claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS-III*"), No. 07 Civ. 2935

(DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

## III.   Facts and Contentions

Plaintiff states that he was serving a sentence of one to three years[6]

imprisonment, and he reached his maximum expiration date of December 30, 2009.

(Compl. at CM/ECF p.5). Plaintiff alleges that, instead of being released on December

30, 2009, he was held in custody pursuant to the petition of defendant Assistant

Attorney General ("AAG") James Williams, who allegedly relied upon MHL §

10.06(k). (*Id.*) Plaintiff alleges that holding him beyond his maximum release date

violated the 5th and 14th Amendment due process clauses of the United States

Constitution as well as the preliminary injunction issued in *MHLS-I*.[7] Plaintiff stresses

that the injunction prohibited the AG from "enforcing" section 10.06(k), which deemed

him "already 'dangerous' . . . ." (*Id.* at 6-8). Plaintiff also alleges that the defendants'

conduct violated Equal Protection. (*Id.* at 8).

---

[5] The standing issue arose from the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012). The issue was whether MHLS could establish any of the "indicia of membership" required for a membership organization to assert associational standing. *Id.* The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

[6] Although plaintiff states that he is serving a one to three year sentence, it appears that he was serving a two to four year sentence. (Boivin Decl. Ex. A, CM/ECF p.7).

[7] Although plaintiff also mentions the permanent injunction in *MHLS-II*, the court notes that only the preliminary injunction could have been violated because the permanent injunction was not issued until 2011.

Plaintiff takes an overly simplified view of the *MHLS* rulings and does not consider the facts of his own case, when he argues that the AG violated the injunction as well as the constitution by enforcing section 10.06(k). The plaintiff relies heavily on the decisions in the *MHLS* cases, and he seeks only damages for the alleged violations. Plaintiff also mentions a case, cited by the court in the *MHLS* cases, interpreting statutes authorizing pretrial detention as well as a case discussing the commitment of a defendant found not guilty by reason of insanity. (Compl. at 6-7) (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992); *United States v. Salerno*, 481 U.S. 739 (1987)).

Defendants have submitted to this court the documents that were filed in plaintiff's MHL Article 10 proceeding, and defendants argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the statute of limitations, the lack of personal involvement, and absolute immunity. Defendants also argue that plaintiff has failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL. The following facts are taken from the defendants' exhibits of which this court takes judicial notice.

Defendants' Exhibit A is the AAG's "Petition for Civil Management" filed in plaintiff's case in the Supreme Court of Wyoming County. (Boivin Decl. Ex. A) (Dkt. No. 18-1 at 4-39). Attached as Exhibit A to the AAG's Petition, is the report of Rebecca Gellman, Ph.D., the licensed psychologist who interviewed plaintiff. (Dkt. No. 18-1 at 16-46). Defendants' Exhibit B is a copy of the Order to Show Cause, signed by Wyoming County Supreme Court Justice Mark H. Dadd, dated December 17, 2009,

scheduling the probable cause hearing for December 23, 2009 at the Wyoming County Courthouse. The order also authorized plaintiff's continued detention pursuant to MHL § 10.06(h), pending the probable cause hearing. (Dkt. No. 18-1 at 48-49). Exhibit C is a copy of Oswego County Supreme Court Justice James P. Murphy's decision, dated February 18, 2010, after plaintiff filed a demand for removal to the county of his conviction, finding probable cause in plaintiff's case.[8] (Dkt. No. 18-1 at 51-52). Exhibit D is an Order, issued by Oswego County Supreme Court Justice James W. McCarthy, dated February 22, 2012, directing plaintiff's civil commitment, after plaintiff waived his trial and dangerousness hearing. (Dkt. No. 18-1 at 54-57).

AAG Roseanne McMorrow's December 19, 2009 petition for civil management states that plaintiff was a detained sex offender at Attica Correctional Facility ("Attica"), serving a two to four year sentence of incarceration, having pled guilty to Attempted Sexual Abuse, First Degree. (Dkt. No. 18-1 at 7). The report details the specific facts of plaintiff's crime, which this court will not repeat, except to say that the crime was clearly sexual in nature. (*Id.* at 7-8). This offense was the plaintiff's third sexual assault conviction, he was a registered sex offender at the time that he committed the crime, and all of his victims had been children. (*Id.*) Plaintiff's sexually related crimes began in 1988. (*Id.* at 8). The AAG's petition also included information indicating that, in addition to the New York State convictions, plaintiff was convicted in Florida on July 6, 1990 for Attempted Aggravated Child Abuse, after which he was

---

[8] Justice Murphy notes that the probable cause hearing was held in Onondaga County on February 9, 2010, and that Justice Murphy decided the issue of probable cause "from the Bench." (Dkt. No. 18-1 at 51).

sentenced to two to six years incarceration. (*Id.*)

Dr. Gellman interviewed plaintiff on December 2, 2009 and after reviewing a variety of documentation outlining plaintiff's personal, mental, and criminal history, determined, with a reasonable degree of professional certainty, that plaintiff met the diagnostic criteria for Pedophilia, attracted to both genders. (*Id.* at 9-10, 16-30). Plaintiff also suffers from Alcohol Dependence in a Controlled Environment and Antisocial Personality Disorder. (*Id.*) Dr. Gellman opined that plaintiff's mental abnormality would affect plaintiff's emotional, cognitive, or volitional capacity to the extent that it would predispose plaintiff to the commission of sex offenses, and that he would have "serious difficulty in controlling such conduct." (*Id.* at 10, 31-34, 35-36). Dr. Gellman performed various statistical tests, designed to predict sexual violent recidivism for sexual offenders. She determined that plaintiff fell into the "high risk" category. (*Id.* at 33-34). Dr. Gellman also noted that plaintiff had a "number of dynamic risk factors." (*Id.* at 11, 33-34).

Based upon plaintiff's general criminal history, sexual offending history, and his mental disorder diagnoses, AAG McMorrow argued that there was an increase in the likelihood that plaintiff would re-offend, and therefore, he was "sufficiently dangerous to require pretrial detention, and no less restrictive alternative to [OMH] confinement [would] adequately protect the public pending trial." (*Id.* at 11). The AAG requested an order from the court, finding probable cause to believe that plaintiff was a sex offender requiring civil management, appointing MHLS to represent plaintiff, producing plaintiff for a probable cause hearing, and holding plaintiff past his scheduled release

10

date pursuant to MHL § 10.06(h),[9] until the probable cause hearing was held and a determination rendered. (*Id.* at 12).

On December 17, 2009, Justice Dadd issued the Order to Show Cause, scheduling the probable cause hearing for December 23, 2009, and appointing MHLS to represent plaintiff. (*Id.* at 48-49). The Order further required the Department of Correctional Services[10] ("DOCS") to have plaintiff available by telephone at the time specified for the return date of the Order, and ordered plaintiff confined pending the hearing pursuant to MHL § 10.06(h). (*Id.*) On December 21, 2009, plaintiff filed a motion to remove the case to Oswego County where he was convicted.[11] (*Id.* at 51). However, Justice Murphy held the probable cause hearing in Onondaga County prior to the removal. (*Id.*) Plaintiff was represented by MHLS at the hearing. (*Id.*)

Justice Murphy stated that the parties "stipulated" to plaintiff's status as a detained sex offender, and the judge heard testimony from Dr. Gellman. AAG John Hartford appeared for the Attorney General, who was Andrew Cuomo at the time. (*Id.*) Justice Murphy stated that he made his decision "from the Bench" that there was probable cause to believe that plaintiff was a sex offender requiring civil management.

---

[9] The court notes that, contrary to plaintiff's claim that simply being held "beyond his release date" was unconstitutional, section 10.06(h) was never challenged in the *MHLS* cases. The only section, relevant to plaintiff's case that was challenged, was section 10.06(k) which only took effect **after** the court found probable cause.

[10] The Department of Correctional Services is now known as the Department of Corrections and Community Supervision ("DOCCS"). The court will refer to the department as DOCS for ease of reference.

[11] This information is being taken from Justice Murphy's probable cause order. (Dkt. No. 18-1 at 51-52).

(*Id.*)  The court ordered that upon his release from DOCS custody, plaintiff would be transferred to a secure facility designated by the Commissioner of OMH and would not be released, pending the final commitment trial. (*Id.* at 52).

Defendants' final exhibit sheds some light upon Justice Murphy's decision "from the Bench." (Def.s' Ex. D, Dkt. No. 18-1 at 54-57).  This order was written by Oswego County Supreme Court Justice McCarthy, after plaintiff ***waived*** his final commitment trial and dangerousness hearing. (*Id.*)  In Justice McCarthy's order, he stated that at the probable cause hearing, Justice Murphy found that plaintiff was "a detained sex offender requiring civil management under Article 10 of the Mental Hygiene Law, ***and that he was sufficiently dangerous to warrant confinement pending trial*** . . . ." (*Id.* at 55) (emphasis added).  Justice McCarthy scheduled a pretrial conference for February 22, 2012, at which plaintiff appeared in person with counsel. (*Id.*)  The state was represented by AAG Margaret E. Welch. (*Id.*)

Justice McCarthy stated that plaintiff was fully advised that he had a right to a trial before either the judge or a jury of twelve, and that the AAG must prove her case "by clear and convincing evidence."  Plaintiff was advised that he would be able to present evidence, witnesses, and testify himself at the trial.  However, after consulting with counsel, and indicating that he understood all of his rights, the plaintiff "knowingly and voluntarily" waived his right to a trial on the issue of mental abnormality, and "admitted" that he was a detained sex offender, who has a disease or disorder that affects his emotional, cognitive, or volitional capacity in a manner that predisposes him to committing sex offenses, and that he has "serious difficulty

12

controlling such conduct." (*Id.* at 55-56). Justice McCarthy made it clear in his order that plaintiff was consenting to the finding "as though same was made after a full trial had been held." (*Id.* at 56).

Justice McCarthy's order specifically stated that plaintiff was advised of his additional right to have a bench trial on the issue of dangerousness and whether "he is a dangerous sex offender who requires confinement," or whether he could be "managed in the community on strict and intensive supervision and treatment (SIST)," and that the AAG would also have to prove dangerousness by clear and convincing evidence. (*Id.*) Plaintiff was also informed of his right to present evidence, witnesses, and testify himself at the trial. However, once again, after consulting with his attorney, and with full knowledge of the consequences, he "knowingly and voluntarily" waived those rights. He consented to the court making the determination that he was a sex offender who required confinement in a secure treatment facility, "as though same was made after a full hearing." (*Id.*) Judge McCarthy therefore, ordered plaintiff's civil confinement and informed plaintiff that he would be provided annually with notice that he could petition for discharge, and also had the right to petition in the future for discharge or release under SIST. (*Id.* at 57).

## IV.    **Absolute Immunity/Personal Involvement**

### A.    **Legal Standards**

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers

virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010). An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). *See also Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate, prosecuting child welfare cases).

Notwithstanding the availability of absolute immunity, in order to recover

damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

### B.    Application

In this case, plaintiff is seeking only damages against two AG defendants. Any suit for damages against these defendants is barred by absolute immunity because the AG was initiating a proceeding against plaintiff on behalf of the state government. Thus, both defendants are entitled to absolute immunity from this action for damages. In addition, neither defendant had any personal involvement in plaintiff's case. Eric Schneiderman is the current Attorney General, who was not in office at the time that the probable cause determination in plaintiff's case was rendered, and James Williams was not the AAG who filed the initial petition, nor was he the AAG who appeared when the probable cause determination was made from the bench by Justice Murphy.

In plaintiff's response to defendants' motion to dismiss, he acknowledges the fact that AAG James Williams was never involved with his case, but asks to amend his

complaint to add the three AAGs who did represent the State of New York in plaintiff's commitment proceedings: Roseanna Morrow, John P. Hartford, and Margaret E. Welch. (Dkt. No. 22 at 4). Plaintiff continues to maintain that AG Schneiderman must be maintained as a defendant. Plaintiff is simply incorrect that he may obtain damages from an individual who was not in office at the time of the incidents in question and had no personal involvement in plaintiff's commitment proceedings. Additionally, notwithstanding personal involvement of the newly named AAGs, absolute immunity applies regardless of the identity or involvement of the prosecuting attorney. Thus, the complaint may be dismissed as against the existing defendants, without leave to amend to add other attorney general defendants in their individual or official capacity who would be equally immune from suit.[12]

## V.   Due Process

### A.   Legal Standards

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*,

---

[12] To the extent that he is attempting to sue the defendants in their official capacities for damages, the Eleventh Amendment would also bar the action. The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted). Thus, the Eleventh Amendment would have precluded a claim for damages under section 1983 against defendants in their official capacities.

91 F.3d 349, 351 (2d Cir. 1996).  The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980).  The issue is whether he was afforded the appropriate procedural safeguards in conjunction with his civil commitment.

## B.    Application

Although this action may be dismissed on the defense of absolute immunity alone, the court will discuss the plaintiff's due process claim because the complaint also fails to state a claim on the merits of this issue.[13]  The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases.  The procedural protections afforded by the statute have been stated in this report above.  The only problem, possibly relevant to plaintiff's case, with the statute thus far has been found in section 10.06(k), which allowed detention of the individual ***after*** a probable cause hearing, but before a full trial, without an "individualized" finding that the individual was dangerous.

---

[13] Plaintiff also claims that his Fifth Amendment Due Process and Equal Protection rights were violated by defendants in this action.  As defense counsel points out, the Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). *See also Ahlers v. Nowicki*, No. 9:12-CV-539, 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18, 2014).  Plaintiff in this case combines the Fifth Amendment with the Fourteenth Amendment "Due Process" clauses.  To the extent that plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice.  Plaintiff also mentions Equal Protection.  The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).  Plaintiff in this case does not state how he has been treated differently than any other individual who is "similarly situated."  Thus, plaintiff does not state any Equal Protection claim.

In this case, although Justice Murphy's decision does not mention either MHL § 10.06(k) or dangerousness, Justice McCarthy notes in his decision that Justice Murphy specifically found that plaintiff was "sufficiently dangerous" to justify pretrial confinement. (Dkt. No. 18-1 at 55). Thus, MHL § 10.06(k) was never improperly applied to confine plaintiff "without" a finding that he was dangerous, and plaintiff was afforded due process under the circumstances. To the extent that plaintiff is challenging the application of section 10.06(k), his case may be dismissed because this section was never improperly applied to him in violation of the Constitution or in violation of any injunctive relief issued by the Southern District of New York.

## VI. **Statute of Limitations**

### A. **Legal Standards**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191

(2d Cir. 1980) (internal quotation marks omitted)).  Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled.  *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

### B.     Application

In his complaint, plaintiff alleges that section 10.06(k) was improperly applied to him.  Section 10.06(k) is only applicable to confine an individual after the probable cause hearing.  Although this court has found that the section was applied consistently with the Constitution and with the *MHLS* cases, it was applied at plaintiff's probable cause hearing February 9, 2010.  The statute of limitations would have started running then, and would have expired on February 9, 2013.  Plaintiff's complaint in this action was filed on June 4, 2013.  The complaint was signed on May 31, 2013. (Dkt. No. 1 at 11).  The court gives an inmate pro se plaintiff the benefit of the doubt when determining when the complaint was filed,[14] thus, the court will use the May 31, 2013 date.  Notwithstanding the additional time, the statute of limitations has run.

Statutes of limitation are generally subject to equitable tolling where it is necessary to prevent unfairness to a plaintiff who is not at fault for his lateness in filing.  *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011).  Equitable tolling is an extraordinary measure that applies only when the plaintiff is prevented from filing, despite exercising that level of diligence which could reasonably be expected under the circumstances.  *Id.*  In this case, there is no indication that there equitable tolling would

---

[14] This is generally referred to as the mailbox rule.  The Supreme Court has held that an inmate's papers may be deemed "filed" at the moment of delivery to prison authorities for forwarding to the district court. *Houston v. Lack*, 487 U.S. 266 (1988).

be appropriate, particularly because plaintiff was represented by counsel during the pendency of the proceedings under the MHL.

## VII.    Opportunity to Amend

### A.    Legal Standard

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B.    Application

In his response to defendants' motion to dismiss, in addition to repeating most of the statements in his complaint, plaintiff argues now that he never waived a "timely" probable cause hearing, which should have occurred seventy-two hours after his release date, nor did he waive a "timely" commitment trial under the statute, which should have occurred sixty days after the probable cause hearing. (Dkt. No. 22 at 4-5).  Plaintiff did not raise this claim in his complaint.  Generally, one cannot amend a complaint in response to a motion to dismiss. *See Chamberlin v. City of White Plains*, No. 12-CV-5142, 2013 WL 6477334, at *25 n.19 (S.D.N.Y. Dec. 10, 2013) (citing *Wright v. Ernst & Young. LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).  Because plaintiff is pro se, however, this court will consider plaintiff's new claim in conjunction with whether to allow him the opportunity to amend to assert it.

In *Roache v. Attorney General's Office*, No. 9:12-CV-1034, 2013 WL 5503151,

at *13-15 (N.D.N.Y. Sept. 30, 2013),[15] Magistrate Judge Peebles recommended that the court dismiss an action for damages, very similar to this case, as against the AG defendants in both their official and their individual capacities, based on absolute immunity, lack of personal involvement, and Eleventh Amendment immunity. However, Judge Peebles found that, liberally construed, plaintiff's claims in *Roache* could give rise to a due process claim, for the ***delay*** in the probable cause hearing and trial. *Id.* at *15. Judge Peebles recommended dismissing the action, but affording "plaintiff an opportunity to amend his complaint to name a defendant that may be properly sued for this alleged violation, ***if such an individual exists***." *Id.* at *15 (emphasis added).

In this case, the court notes that the plaintiff's release date was December 30, 2009. The AAG's petition was dated December 17, 2009, and was made returnable on December 23, 2009. Plaintiff made a motion to remove the case to Wyoming County on December 21, 2009, prior to the return date for the probable cause hearing. Justice Murphy granted removal, but held the probable cause hearing on February 9, 2010, before he sent the case to Wyoming County. While the MHL requires the probable cause hearing to be held within seventy-two hours of the anticipated release date, to the extent that plaintiff could have a cause of action for a timely "probable cause hearing," any delay in this case, was partially due to plaintiff's own motion and to the court's scheduling of the probable cause hearing. (Dkt. No. 18-1 at 51) (Justice Murphy's

---

[15] District Court Judge Lawrence Kahn adopted Judge Peebles's Report-Recommendation in is entirety. 2013 WL 5503151, at *1-3.

21

Order finding probable cause).  To the extent that any delay was the fault of the court or the AAG, plaintiff could not amend his complaint to allege any action against the judge[16] or the AAG based on the absolute immunity discussed above.

Plaintiff then states that he did not waive his right to a timely commitment trial, and that the trial should have been sixty days after the probable cause finding on February 9, 2010, but instead was scheduled two years later in February of 2012.  The court notes that although plaintiff states that the "trial" was two years later, plaintiff ultimately waived his right to a trial and to a dangerousness hearing as stated above.[17] Once again, it is impossible to know why there was a lengthy delay or who was responsible for the delay.  Even assuming that plaintiff had a due process claim for the delay in scheduling the commitment trial, plaintiff would have to amend his complaint to add the claim as well as a defendant who would be amenable to a damage claim.  As stated above, if the delay was due to the court or to the AG, there would be no defendant that plaintiff could add, and if the delay was due to plaintiff's attorney, he or

---

[16] With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991).  Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004).  Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mireles*, 502 U.S. at 11 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.  Neither of these exceptions remotely applies in plaintiff's case.  Thus, he could not amend his complaint to add a claim for the assessment of damages against any judge even if it could be determined that the delay in bringing plaintiff to trial was the fault of the court.

[17] There was no need to hold a trial or a dangerousness hearing because of plaintiff's waiver.

she does not act under color of state law for purposes of section 1983 liability. Public defenders, legal aid attorneys, and private counsel, representing an individual, do not act under color of state law, as required to support a section 1983 action. *See Brewster v. Nassau County*, 349 F. Supp. 2d 540, 546-47 (E.D.N.Y. 2004) (Legal Aid attorney); *Green v. Bartek*, No. 3:05-CV-1851, 2007 WL 4322780, at *2-3 (D. Conn. 2007) (attorney representing Green in a family court neglect petition).

Finally, even assuming that a due process claim could be stated as the result of a violation of the statutory time limits contained in the MHL, it is likely that such a claim would be time barred. Sixty days after February 9, 2010 would be April 10, 2010. Plaintiff did not file his complaint in this case until June 4, 2013, and he signed the complaint on May 31, 2013. Even giving plaintiff the extra time between signing and filing, his complaint would still be untimely under the three-year statute of limitations.

The court has considered whether equitable tolling would apply and finds that since plaintiff had an attorney during his commitment proceedings, and he ultimately waived his right to a trial, there is no exceptional reason that would justify equitable tolling. Thus, there is no basis to allow plaintiff to amend his complaint to add new claims of a violation of other sections of the MHL.

Finally, violations of time limitations set by state statutes such as the MHL do not necessarily violate due process. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (collecting cases). In his complaint, plaintiff cited *United States v. Salerno* in arguing that his due process rights were violated. However, *Salerno*, and the line of cases discussing pretrial detention in federal criminal actions, make it clear that

23

once dangerousness and/or risk of flight is determined by the court, even lengthy

pretrial confinement does not violate due process. *See United States v. Lewis*, No. 12

Cr. 655, __ F. Supp. 2d __, 2014 WL 1092182, at *10-13 (S.D.N.Y. March 20, 2014)

(18-month pretrial detention did not violate due process) (citing inter alia *United States*

*v. Salerno*, 481 U.S. at 746-52; *United States v. Briggs*, 697 F.3d 98, 101-104 (2d Cir.

2012) (holding that a 26-month period of pretrial detention did not violate due

process)).

In *Briggs*, the defendant argued that his lengthy pretrial detention violated due

process. The court stated that due process "places no bright-line limit on the length of

pretrial detention." 697 F.3d at 101. Pretrial detention satisfied due process when its

purpose is regulatory, rather than punitive, and "[p]ermissible regulatory purposes

include 'preventing danger to the community.'" *Id.* (quoting *Salerno*, 481 U.S. at 747).

In this case, notwithstanding the delay in the scheduling of plaintiff's commitment trial,

the court had already found that plaintiff was sufficiently dangerous at the probable

cause hearing. Thus, the two year delay in scheduling the trial did not violate plaintiff's

constitutional rights,[18] and the fact that plaintiff waived both the trial and the

dangerousness hearing is further support that he was properly confined. Thus, the court

need not allow an amendment in this case.

---

[18] The New York courts have revisited MHL Article 10 after the MHLS injunctions and have also held that the probable cause finding "incorporates" a finding of dangerousness, justifying the inmate's detention until the trial, and the purpose of the trial is to determine whether "continued detention" at a secure facility is warranted or whether in its discretion, the court may allow the inmate to be released on SIST. *See State v. Enrique T.*, 93 A.D.3d 158, 937 N.Y.S.2d 203 (1st Dep't 2012) (also holding that MHL § 10.06(k) was not unconstitutional even after the MHLS cases were decided).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 18) be

**GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY WITH**

**PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of*

*Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R.

Civ. P. 6(a), 6(e), 72.

Dated: May 9, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge